Pius KELLER, Petitioner and Appellant,

v.

Earl PARIS, Highway Commissioner, Respondent.

Civ. No. 8877.

Supreme Court of North Dakota.

April 12, 1973.

Rehearing Denied May 11, 1973.

Christensen, Christensen & Bear, Bismarck, for petitioner and appellant.

Vernon Pederson and Norbert H. Lange, Asst. Attys. Gen., State Highway Department, Bismarck, for respondent.

ERICKSTAD, Judge.

The petitioner Pius Keller appeals from an order of the district court of Burleigh County, which dismisses his appeal from an order of the highway commissioner.

The commissioner's order revokes an order made by Breen Kennelly, a hearing officer, which permitted Keller to secure a restricted driver's license allowing him to drive a motor vehicle during daylight hours for a period of one year.

The dismissal of the appeal from the order of the highway commissioner reinstates an order of the highway commissioner which extended the revocation of Keller's driving privileges for an additional period of one year, the petitioner having been convicted of driving a motor vehicle while his driver's license was revoked. The extension order was made under Section 39–06–43, N.D.C.C. It was erroneously denominated a suspension by the commissioner's agent.

Keller's driver's license had previously been revoked for a period of six months as a consequence of his having refused to submit to a test to determine the alcoholic content of his blood pursuant to the provisions of Section 39–20–04, N.D.C.C.

The Kennelly order which the commissioner by his order of May 18, 1972, revoked reads:

"An administrative hearing was held on April 3, 1972, in the Highway Department Building in Bismarck, North Dakota. The decision made by the Hearing Officer was that both Revocation Order #53554 and Suspension Order #61127 were to be sustained. It was further noted Revocation Order #53554 would be terminated on May 12, 1972; and Suspension Order #61127 would be in effect until February 29, 1973.

"It was felt by the Hearing Officer at that time that the Petitioner unquestionably had the revocation period of six months due because he had fulfilled the scope of the Implied Consent Law as stated in Section 39–20–01. The second Order issued for driving under revocation was made after proper records were received by the Safety Responsibility Division. The hearing brought out the fact that the Petitioner was misinformed by his attorney, who is no longer practicing, that a Stay Order had been obtained for him and that he was able to drive again.

"The Petitioner was arrested on April 8, 1971, and has been without a license at least six months during that time. If he is not able to work at his insurance job soon, he will be financially distressed.

"Therefore, I hereby order that Suspension Order #61127 be changed to read that Pius J. Keller shall be able to apply for a driver's license which will state on it—for daylight hours only, until February 29, 1973.

"Dated this 10th day of May, 1972, at Bismarck, North Dakota."

The commissioner's order revoking hearing officer Kennelly's order reads:

"Attached is a Memorandum from Mr. Pederson with his legal interpretation of the above-referred statute as applicable to the Keller matter. As suggested by such Memorandum, I am hereby setting aside Mr. Kennelly's decision of May 10, 1972.

"I am further directing Mr. Kennelly to hold hearings under Section 39–06–33, only when the suspension order to be reviewed is one issued pursuant to Section 39–06–32.

"Finally, I request that you provide a suitable form for future extensions of revocations and suspensions under Section 39–06–43 so as to eliminate possibilities of misinterpretation."

The memorandum of Vernon R. Pederson, the general counsel for the highway department, which is referred to in the commissioner's order of May 18, reads:

"Mr. Kennelly conducted a hearing at the request of Mr. Keller and on May 10, 1972, made an Order directing a modification of a Suspension Order to permit Mr. Keller to obtain driving privileges during daylight hours only.

"Mr. Ellingson questioned the validity of issuing such restricted driving privileges at this time. I have examined the record and have concluded that the issuance of any restricted privileges would be contrary to law.

"The pertinent facts are as follows:

"1. April 15, 1971—Order of Revocation issued under the provisions of Section 29–20–04 for refusal to submit to the implied consent test.

"2. May 9, 1971—Surrendered driver's license.

"3. May 11, 1971—Convicted of DWI.

"4. May 18, 1971—Arrested on charge of driving while under revocation.

"5. May 20, 1971—Order of Revocation issued under the provisions of Section 39–06–31(6), that is, convicted of DWI.

"6. July 1, 1971—Revocation or suspension stayed by Order of the District Court—license returned.

"7. January 4, 1972—Revocation of April 15, 1971, reissued.

"8. January 12, 1972—Surrendered driver's license.

"9. January 17, 1972—Convicted of driving while under revocation. This item relates to May 18, 1971, arrest.

"10. February 29, 1972—Order of Suspension issued under the provisions of Section 39–06–43 for one year additional as a result of January 17, 1972, conviction.

"11. April 3, 1972—Administrative hearing held under authority of Section 39–06–33.

"12. May 10, 1972—Mr. Kennelly's Order directing a modification of Suspension Order of February 29, 1972.

"The statutes applicable are at first glance somewhat confusing or contradictory, which led to the situation in this instance. The hearings conducted by Mr. Kennelly, when there has been a suspension of license, are covered by Section 39–06–33. This section is quite specific in authorizing the 'modification' of the Suspension Order and to that extent appears to supersede the provision of Section 39–06–03(2) which says the Commissioner 'shall not issue any license to a person whose license has been suspended.'

"A more careful reading of Section 39–06–33 in the light of the facts in the Keller Case discloses that the Suspension Order applicable to him was not a suspension under Section 39–06–32, and in fact should better have been an Order extending the previous Revocation Order. Therefore, he was not entitled to a hearing under 39–06–33 at all. That leaves us with a case where 39–06–03(2) is definitely applicable, and no license of any type can be issued to Mr. Keller at this time.

"I suggest that you direct that Mr. Kennelly's decision of May 10, 1972, be set aside; that henceforth Mr. Kennelly examine all requests for hearings on suspensions to make certain that the Suspension Order which was issued was one under Section 39–06–32; and that the Safety Responsibility Division make certain that a different form be used when extending a revocation under Section 39–06–43."

Petitioner Keller on appeal seems to be contending that the memorandum of the general counsel for the highway department was in error and that since the commissioner based his revocation order of May 18 upon that memorandum the order should be set aside and the case remanded so that the commissioner can exercise the discretion which Keller believes the commissioner has under Section 39–06–33, N.D. C.C., to modify a revocation or an extension of a revocation made under Section 39–06–43, N.D.C.C.

The following statutes are pertinent to a discussion of this issue.

"39–06–31. Mandatory revocation of licenses.—The commissioner shall revoke forthwith the license of any operator upon receiving a record of such operator's conviction of any of the following offenses, when such conviction has become final:

\* \* \* \* \* \*

"6. Conviction of driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree which renders him incapable of safely driving a motor vehicle."

"39–06–43. Extension of license suspension or revocation.—The commissioner upon receiving a record of the conviction of any person upon a charge of driving a vehicle while the license or driving privileges of such person was suspended shall extend the period of such suspension for an additional like period and if the original suspension was for an indefinite or unstated period of time, the additional suspension shall be for a period of six months on and after such person would otherwise have been entitled to the return of license or privileges. If the conviction was upon a charge of driving while a license or driving privileges was revoked the commissioner shall not issue a new license for an additional period of one year from and after the date such person would otherwise have been entitled to apply for a new license."

"39–06–33. Hearing subsequent to license suspension.—Upon suspending the license and/or driving privilege of any person as authorized in section 39–06–32, the commissioner shall immediately notify the licensee in writing, and upon his request shall afford him an opportunity for a hearing as early as practical within not to exceed twenty days after receipt of such request in the county wherein the licensee resides unless the department and licensee agree that such hearing may be held in some other county. \* \* \*"

"39–06–32. Authority to suspend licenses.—The commissioner may suspend the license of an operator without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:

"1. Has committed an offense for which mandatory revocation of license is required upon conviction;

\* \* \* \* \* \*

"39-06-03. What persons shall not be licensed.—The commissoner shall not issue any license hereunder:

\* \* \* \* \* \*

"2. To any person whose license has been suspended in this state or in any other state during such suspension, nor to any person whose license has been revoked, except as provided in sections 39-06-35 and 39-06-36;

\* \* \* \* \* \*

"39-06-35. Period of suspension.— The commissioner shall not suspend a driver's license or privilege to drive a motor vehicle on the public highways for a period of more than one year, except as permitted under section 39-06-43."

"39-06-36. Restoration of revoked licenses.—Any person whose license or privilege to drive a motor vehicle on the public highways has been revoked shall not be entitled to have such license or privilege renewed or restored unless the revocation was for a cause which has been removed, except that after the expiration of the revocation period such person may make application for a new license as provided by law, but the commissioner shall not then issue a new license unless and until he is satisfied after investigation of the character, habits, and driving ability of such person that it will be safe to grant the privilege of driving a motor vehicle on the public highways."

"39-06-23. Definition of suspension, revocation, and cancellation.—In this title, unless the context or subject matter otherwise requires:

"1. Suspension means that the driver's license and privilege to drive a motor vehicle on the public highways are temporarily withdrawn but only during the period of such suspension.

"2. Revocation means that the driver's license and privilege to drive a motor vehicle on the public highways are terminated and shall not be renewed or restored, except that an application for a new license may be presented and acted upon by the commissioner after the expiration of the period of revocation, which period shall not be less than thirty days nor more than one year.

"3. Cancellation means that a driver's license is annulled and terminated because of some error or defect or because the licensee is no longer entitled to such license, but the cancellation of a license is without prejudice and application for a new license may be made at any time after such cancellation."

Neither party to this appeal has referred us to any authority for their opposing contentions as to the meaning of the pertinent statutes.

In search of legislative intent we have examined the minutes and files of the Subcommittee on Transportation of the Legislative Research Council for the 1965–67 interim between legislative sessions, which subcommittee made an extensive study of a number of the chapters contained in Title 39, including Chapter 39-06.

The Legislative Research Committee Report to the 34th Legislative Assembly, of the committee which functioned during the 1953–55 interim, discloses that as a result of a study and a report made by the Automotive Safety Foundation, employed by the Highway Safety Subcommittee of the Research Committee, the full Research Committee recommended that the driver's licensing provisions of Chapter 39-06, N.D. C.C., and amendments thereto be repealed and the language of Chapter 6 of the Uniform Vehicle Code be adopted.

Chapter 6 of the 1968 revised edition of the Uniform Vehicle Code relates to driver's licensing. Section 6-205 of the Uniform Vehicle Code deals with mandatory

revocation. Section 6–206 deals with suspensions. Subsection (c) of the latter section provides for notice and hearing after suspensions are made under Subsection (a) thereof. There are no annotations to these sections.

In our search for legislative intent we found very little that would help us in determining the specific issue confronting us today.

The minutes of the Transportation Subcommittee of the Legislative Council during the 1965–67 interim, however, did disclose a concern on the Subcommittee's part over the increase in highway accidents and deaths resulting therefrom. This concern the Subcommittee attempted to verbalize in its expression of legislative intent, which culminated in the amendment to Section 39–01–01.1, N.D.C.C., which was incorporated in Senate Bill No. 44 of the 1967 Session Laws as Chapter 292. In this finally amended version it is expressed that "the legislature recognizes the necessity that individual prerogatives be considered secondary to the general welfare." It is true that this reference is contained in a paragraph relating to making appropriate use of recommended standards. This language, however, when read in light of the language of the last paragraph of the section, discloses that the Legislature was concerned basically with protecting public safety, promoting the general welfare, and advancing the economy of the State.

Pertinent is a rule of construction we have applied on other occasions to determine legislative intent.

"When two statutes relating to the same subject matter appear to be in conflict, they should be construed whenever possible to give effect to both statutes if this can be done without doing violence to either." Stradinger v. Hatzenbuhler, 137 N.W.2d 212, Syllabus No. 1 (N.D. 1965).

See also Kosmatka v. Safety Responsibility Division, Etc., 196 N.W.2d 402 (N.D.1972), and In Re Weisser Finance Company, 169 N.W.2d 420 (N.D.1969).

Applying that rule we conclude that Section 39–06–32, Subsection 1, N.D.C.C., permits the commissioner to suspend a person's driver's license *prior* to conviction of an offense for which mandatory revocation of a license is required upon conviction, when the records of the commissioner or other evidence presented to the commissioner disclose to his satisfaction that the person accused of such an offense has committed it. The commissioner, after due notice and hearing, may modify a suspension ordered pursuant to Section 39–06–32, Subsection 1, N.D.C.C., but he may not modify a revocation arising out of Sections 39–06–31 and 39–06–43, N.D.C.C.

For the reasons stated in this opinion, the order of the district court dismissing the appeal from the commissioner's order is hereby affirmed and the case is remanded with instructions to the district court to include in its remand to the commissioner the authorization that the commissioner may now make such an order as is necessary to carry out the intent of the law, which is that the revocation of the petitioner's driver's license should be extended for an additional year under the circumstances of this case.

STRUTZ, C. J., and PAULSON, KNUDSON and TEIGEN, JJ., concur.